ATTORNEY FOR APPELLANT
Deborah Markisohn
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S02-1106-CR-340

DOUGLAS DENZEL,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F08-0807-CM-168596
The Honorable Barbara Collins, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1001-CR-89

**June 14, 2011**

**David, Justice.**

Douglas Denzel is a fifty-eight-year-old man. Psychiatric reports reveal that he suffers from paranoid schizophrenia.

In July 2008, the State charged Denzel with Class A misdemeanor resisting law enforcement and Class B misdemeanor public intoxication. The State alleged that police officers responded to a complaint that Denzel had refused repeated requests to leave a bar. According to the probable cause affidavit, the officers then also asked Denzel to leave, but he would not.

Denzel allegedly had bloodshot eyes, slurred speech, and a wobbly gait, and when an officer attempted to handcuff him, Denzel screamed an obscenity and acted as if he were going to punch the officer. Officers eventually subdued and arrested Denzel.

A couple of weeks later, the trial court ordered a competency evaluation, and two psychiatrists examined Denzel. In their respective reports submitted to the court, both doctors diagnosed Denzel as a paranoid schizophrenic and stated he was incompetent to stand trial. One opined that it may take several months of inpatient treatment to restore Denzel to competency. The other opined that Denzel would "likely" respond positively to treatment and "regain competence to stand trial in the foreseeable future."

In August 2008, after receiving the reports, the trial court found Denzel incompetent to stand trial and committed him to the Division of Mental Health and Addiction (DMHA) for treatment. Accordingly, a few days later, Denzel was transported to a hospital.

In October 2008, after receiving letters stating that Denzel had been restored to competency, the trial court issued an order to have Denzel brought to a pretrial conference on October 30. But on October 29, the hospital emailed the trial court, stating Denzel had "been cheeking his meds when he discovered he would be returning to court" and was decompensated. Denzel was thus no longer competent to stand trial and remained at the hospital.

In November 2008, the trial court received a letter stating that Denzel had again been restored to competency. At a pretrial conference on December 11, Denzel requested to be placed in the mental-health diversion program. The trial court referred the case to the diversion program and released Denzel on his own recognizance.

In February 2009, the State and Denzel executed a mental-health diversion agreement. In June, Denzel became noncompliant with his medications and treatment in contravention of the agreement. Denzel also failed to appear for a court hearing. As a result, the trial court issued an arrest warrant, and Denzel was arrested on August 6.

The following day, the trial court ordered competency evaluations. Both psychiatric evaluation reports revealed Denzel was currently incompetent to stand trial but opined he could

2

be restored to competency. Accordingly, on September 9, the trial court entered a commitment order.

That same day Denzel filed a motion to dismiss the charges, relying on State v. Davis, 898 N.E.2d 281 (Ind. 2008). He argued he was entitled to dismissal because he had already served, with credit time earned, the maximum imposable sentence for his charges. The State filed a response, countering that (1) unlike Davis, psychiatrists have opined that Denzel will be restored to competency and that (2) the State has interests sufficiently important to overcome Denzel's substantial liberty interest.

The trial court denied the motion to dismiss. Denzel sought, and was granted, an interlocutory appeal of that order. Denzel raised one issue on appeal: whether the pending charges violate his right to due process on fundamental-fairness grounds.

The Court of Appeals found that the pending charges do not violate Denzel's right to due process and affirmed the trial court. Denzel v. State, 935 N.E.2d 1245 (Ind. Ct. App. 2010). We address Denzel's due process claim in conjunction with another decision today that presents a substantially similar issue.

Denzel's appellate reply brief and petition to transfer focus heavily on the Court of Appeals decision in Curtis v. State, 932 N.E.2d 204 (Ind. Ct. App. 2010), trans. granted. In Curtis, the Court of Appeals found that the pending criminal charges violated the defendant's due process rights despite the facts that (1) the trial court had not found the defendant incompetent under the mandated statutory procedures and (2) the trial court had never committed the defendant. Id. at 207–08. As reflected in Curtis v. State, No. 49S02-1010-CR-620, __ N.E.2d __ (Ind. June 14, 2011), we disagree and find no due process violation in that case in light of the relevant precedent—namely, State v. Davis, 898 N.E.2d 281 (Ind. 2008)—and the various interests at stake.[1]

Although the facts of Denzel's case differ from the facts of Curtis, the relevant precedent and interests at stake are the same. As the Court of Appeals noted, there has been no determina-

---

[1] Although we find no due process violation in Curtis, we find that Curtis has a valid claim under Indiana Criminal Rule 4(C) and is thus entitled to discharge on those grounds.

tion that Denzel will never be restored to competency. Denzel, 935 N.E.2d at 1248. In fact, the record not only reflects that Denzel can be restored to competency but also reveals that Denzel stopped taking his medications once he discovered he would return to court. It would be counterintuitive to allow a defendant to assert a due process violation based on incompetency if the defendant himself purposely decompensated to avoid going to court. Accordingly, Denzel does not have a viable fundamental-fairness argument.

Although the Court of Appeals was correct in rejecting Denzel's due process argument, we believe that the standard it used in evaluating Denzel's claim was too stringent:

> Under Davis and Habibzadah, a refusal to dismiss charges against an accused may violate his due process rights *only* if (1) the accused has been committed for treatment longer than the maximum possible sentence that could be imposed upon conviction, *and* (2) the court has . . . determined that the accused has no reasonable likelihood of being restored to competency.

Id. at 1248 (first emphasis added). Although relevant precedent is a necessary consideration when evaluating defendants' fundamental-fairness claims, this Court noted in Davis that "due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.'" 898 N.E.2d at 287 (quoting Lassiter v. Dept. of Soc. Servs. of Durham County, N.C., 452 U.S. 18, 24 (1981)). As we note today in Curtis, there may be factual scenarios that differ from Davis and other relevant precedent that still fall within the parameters of a due process violation. Curtis, slip op. at 13. But, as explained above, Denzel's case is not one of them.

In all other respects, we summarily affirm the opinion of the Court of Appeals, under which the trial court's denial of Denzel's motion to dismiss is affirmed. Ind. Appellate Rule 58(A)(2).

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.